USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 04/08/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

MICHAEL KORS, L.L.C.,

                              Plaintiff,

          -against-

SU YAN YE and DOES 1-10,

                              Defendants.

-----------------------------------------------------------------X

**OPINION & ORDER**

**1:18-CV-2684 (KHP)**

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

## BACKGROUND

Plaintiff Michael Kors, L.L.C. ("Michael Kors") is a well-known, 35-year-old fashion brand that sells various items including handbags, footwear, apparel, and accessories. Its lower priced MICHAEL collection utilizes the MK Common Law Trademark ("MK Trademark") which consists of a block letter "M" connected to the block letter "K" that appears as:



Many of the products in the MICHAEL collection are decorated with rows of the repeating MK logo (the "MK Trade Dress"), which is the most distinct element of the MK Trade Dress.

Michael Kors asserts that Defendant Su Yan Ye has promoted, distributed, and sold handbags, wallets, and related accessories under the brand Wendy Keen using a logo in a

1

manner confusingly similar to the MK Trade Dress.  The Wendy Keen logo consists of a block letter "W" connected to the block letter "K" (the "WK Logo") that appears as:



Like Michael Kors, Defendant has decorated her products with rows of her logo–the "WK Trade Dress."  Examples of the use of the repeating logos by both parties are included in the Complaint and shown below (Plaintiff's product is on the left and Defendant's product is on the right).

 

Michael Kors alleges that by selling products with a confusingly similar logo-based design or trade dress, Ye has engaged in (1) trade dress infringement in violation of the Lanham Act, 15 U.S.C. § 1125, and New York law and (2) unfair competition in violation of New York law.

**THE PRESENT MOTION**

Presently before the Court is Defendant's motion to compel Michael Kors to produce documents requested in thirteen of her Requests for Production (Nos. 6, 12, 13, 16, 20-22, 28, 31-34, and 37) and answer four of her Requests to Admit (Nos. 1, 2, 13, and 14).[1]

The majority of the document requests at issue seek documents concerning Plaintiff's use of the MK Trade Dress and MK Trademark including: business, strategic, and market plans concerning the MK Trademark and MK Trade Dress (12); trademark searches and investigations concerning the MK Trademark or MK Trade Dress (13); disputes between Plaintiff and third parties concerning the MK Trademark or MK Trade Dress (21); Plaintiff's enforcement of the MK Trademark or MK Trade Dress (20, 22); agreements concerning the use or registration of the MK Trademark or MK Trade Dress (28); Plaintiff's application(s) to register the MK Trademark and MK Trade Dress (31); third party use of marks or trade dress similar to the MK Trademark or MK Trade Dress (32), including the initials "MK" (33) or a repeating pattern of initials (34); and claims or lawsuits filed by Plaintiff concerning the MK Trademark and MK Trade Dress (37). Request No. 6 seeks organizational charts reflecting Plaintiff's corporate structure, affiliated companies, and management hierarchy. Request No. 16 seeks specimens of packaging for each product sold or licensed by Plaintiff bearing the MK Trade Dress and the MK Trademark and documents sufficient to identify the periods of time during which such packaging was in use.

---

[1] Plaintiff served forty-seven separate requests for production and fourteen requests to admit.

Plaintiff objects to Defendant's requests because, *inter alia*, they seek irrelevant information and are disproportionate to the needs of this case and are overbroad insofar as they seek "all documents" concerning listed topics.

The Requests to Admit seek admissions that the MK Trademark and MK Trade Dress are not identical to the WK logo and WK Trade Dress (1, 2); Plaintiff is precluded by agreement with Mary Kay cosmetics from registering the MK Trademark (13); and that the MK Trademark and MK Trade Dress are not presumptively valid (14).

Plaintiff objects to these Requests to Admit on relevance grounds.

## DISCUSSION

Federal Rule of Civil Procedure ("Rule") 26(b)(1) permits parties to obtain discovery:

> "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

Fed. R. Civ. P. 26(b)(1). Since the 2015 amendments to the federal rules, the scope of discovery permitted has narrowed. Nonetheless, relevance is still a broad concept under Rule 26(b)(1). *See, e.g., Villella v. Chemical & Mining Co. of Chile Inc.,* 15-cv-2016, 2019 WL 171987, *2-3, (S.D.N.Y. Jan. 11, 2019); *New York v. United States Department of Commerce*, 18-cv-2921 & 5025, 2018 WL 5260467, *1 (S.D.N.Y. Aug. 17, 2018). Additionally, this Court has broad

discretion in determining relevance for discovery purposes.  *Williams v. Rosenblatt Sec.*, Inc., 236 F. Supp. 3d 802, 803 (S.D.N.Y. 2017); *In re Air Crash Near Clarence Center, New York, on February 12, 2009*, 277 F.R.D. 251, 253 (W.D.N.Y. 2011); *In re PE Corp. Securities Litigation*, 221 F.R.D. 20, 23 (D. Conn. 2003).  With the above principles in mind, the Court addresses the motion.

1. **Defendant's Requests for Production**

    *a.  Federal Rule of Civil Procedure 34*

    Rule 34 permits a party to serve on any other party a request for documents and electronically stored information so long as the request is within the scope of Rule 26(b)(1).  The request must "describe with reasonably particularity each item or category" of documents and information sought.  Fed. R. Civ. P. 34(b)(1)(A).  Changes to the rule made in 2015 "were intended to address systemic problems in how discovery requests and responses traditionally were handled."  The Sedona Conference, *Federal Rule of Civil Procedure 34(b)(2) Primer: Practice Pointers for Responding to Discovery Requests*, 19 Sedona Conf. J. 447, 452 (2018).  Objections to document requests must be stated with specificity as well and include the reasons for the objection.  Fed. R. Civ. P. 34(b)(2)(B-C).

    Both the requesting and responding parties are expected to act in accordance with both the letter and intent of the amended Rules.  Indeed, amended Rule 1 emphasizes that the parties have a responsibility to construe and administer the rules to ensure the just, speedy and inexpensive resolution of every action.  Fed. R. Civ. P. 1; Fed. R. Civ. P. 1 advisory committee's note to 2015 amendment.  Parties must also certify that every discovery request and response

is in fact consistent with Rule 26(b)(1), not interposed for any improper purpose, and not unreasonable or unduly burdensome.  Fed. R. Civ. P. 26(g).

### b. *The Parties' Compliance with their Obligations Under the Federal Rules*

This Court's initial reactions to reading Defendant's discovery requests are that they are neither tailored to the needs of this case nor consistent with Rule 34.  In each, Plaintiff requests "all" documents concerning or pertaining to various listed topics.  None are limited by date.  Several of them overlap and thus contain unnecessary redundancy.  For these reasons, the requests are clearly overbroad and unreasonable.  *Vaigasi v. Solow Mgmt. Corp.*, No. 11 Civ. 5088 (RMB)(HBP), 2016 WL 616386, at *15 (S.D.N.Y. Feb. 16, 2016); *Henry v. Morgan's Hotel Group, Inc.,* 2016 WL 303114, at *2 (S.D.N.Y. Jan. 25, 2016).  Notably, during the telephonic conference this Court held with the parties about the document requests, Defendant's counsel conceded that the requests were their "standard requests," designed to capture all documents that could potentially be relevant to the elements of the claims and damages.  Defendant's counsel also conceded that Defendant would accept responses that were narrower than the requests.

The 2015 amendments to the Rules were designed to stop counsel from relying on standard, overbroad requests and to also require tailoring based on the particular issues and circumstances in the case.  Defendant clearly did not comply with its discovery obligations under Rules 1, 26, and 34 when propounding the requests.

At the same time, Plaintiff's counsel also did not comply with Rule 34 insofar as Plaintiff's objections were boilerplate and its description of the documents it would produce vague.  Rule 34 imposes the responsibility on a responding party to state what it is withholding

6

or describe the scope of the production it is willing to make, including the parameters of the search to be made (i.e., custodians, sources, date ranges and search terms, or search methodology).  Fed. R. Civ. P. 34; Fed. R. Civ. P. 34 advisory committee's note to 2015 amendment; 19 Sedona Conf. J. at 477-81.  A failure to comply with this responsibility carries serious consequences.  A number of courts have held that an objection that does not appropriately explain its grounds is forfeited.  *See, e.g., Wesley Corp. v. Zoom T.V. Prods., LLC,* No. 17-100212018, 2018 WL 372700, at *4 (E.D. Mich. Jan. 11, 2018); *Fischer v. Forrest*, No. 14 Civ. 01304, 2017 WL 773694 (S.D.N.Y. Feb. 28, 2017) ("[A]ny discovery response that does not comply with Rule 34's requirement to state objections with specificity (and to clearly indicate whether responsive material is being withheld on the basis of objection) will be deemed a waiver of all objections (excerpt as to privilege).").  This Court notes that Plaintiff also did not provide Defendant any information as to when it would produce documents to which it had no objection.  As a result, during the call with the parties less than two weeks before the close of discovery, this Court learned that Plaintiff has not produced all the documents it agreed to produce.  This is unacceptable.

The parties did attempt to meet and confer but made little progress in their discussions.  Both sides were reluctant to "give ground" even though it became clear during this Court's conference with the parties that there was room for compromise as to a number of the disputed requests.  As a reminder to the parties, Rule 26(C)(1) requires parties to meet and confer in good faith in an effort to resolve disputes without the need for court action.  Similarly, Local Civil Rule 26.4(a) states that "[c]ounsel are expected to cooperate with each other, consistent with the interests of their clients, in all phases of the discovery process."

### c. Relevance Objections

A major point of contention between the parties is the Request for Documents concerning the MK Trademark as distinct from the MK Trade Dress. "A product's trade dress encompasses the overall design and appearance that make the product identifiable to consumers." *Nora Beverages, Inc. v. Perrier Group of America, Inc.*, 269 F.3d 114, 118 (2d Cir. 2001). To prevail on a trade dress infringement claim under the Lanham Act, a plaintiff must prove that "(1) that the mark is distinctive as to the source of the good [(i.e., that it has secondary meaning)], and (2) that there is a likelihood of confusion between its good and defendant's." *Yurman Design, Inc. v. PAJ, Inc.,* 262 F.3d 101, 115–16 (2d Cir.2001); *see also Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 769 (1992).

Distinctiveness may be proven by showing that the intrinsic nature of the mark serves to identify a particular source or that "in the minds of the public, the primary significance of [the mark] is to identify the source of the product rather than the product itself." *Yurman*, 262 F.3d at 115 (citing *Wal–Mart Stores, Inc. v. Samara Bros., Inc.,* 529 U.S. 205, 210 (2000)). Therefore, the key inquiry is whether customers purchase the product because of its source. *PaperCutter, Inc. v. Fay's Drug Co.,* 900 F.2d 558, 564 (2d Cir. 1990). Factors relevant to this inquiry include "advertising expenditures, consumer studies, sales, competitor's attempts to plagiarize the mark, and length and exclusivity of the mark's use." *Friesland Brands, B.V. v. Vietnam Nat. Milk Co.,* 228 F.Supp.2d 399, 405 (S.D.N.Y. 2002) (quoting *Arrow Faster Co., Inc. v. Stanley Works*, 59 F.3d 384, 393 (2d Cir. 1995)).

Likelihood of confusion is determined by considering the so-called *Polaroid* factors, which are: (1) the strength of plaintiff's mark; (2) the degree of similarity between plaintiff's

and defendant's marks; (3) the proximity of the products; (4) the likelihood that either owner will bridge the gap, using the mark on products closer to the other's area of commerce; (5) evidence of actual consumer confusion (6) good or bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market. *See Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC,* 823 F.3d 153, 160 (2d Cir. 2016) (applying the "eight-factor balancing test introduced in *Polaroid Corp. v. Polarad Elecs. Corp.,* 287 F.2d 492 (2d Cir.1961)").

The standard for proving trade dress infringement under New York common law generally parallels the standard under the Lanham Act, except that there is no requirement to show secondary meaning for distinctive designs. *Cartier, Inc. v. Four Star Jewelry Creations, Inc.,* 348 F.Supp.2d 217, 250 (S.D.N.Y. 2004). Likewise, the standard for proving unfair competition under New York common law is nearly identical to the standard for proving trade dress infringement under the Lanham Act. *Id.* at 251.

Plaintiff acknowledges that the strength of the MK Trademark is a component of its trade dress claim, but argues that the test for trade dress infringement looks at the overall design and appearance of an allegedly infringing product, not a single aspect of the trade dress design. *See Nora Beverages,* 269 F.3d at 118; *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1042 (2d Cir. 1992). Defendant states that it is impossible to separate the MK Trademark from the MK Trade Dress because the MK Trademark is the most dominant and only distinct part of the MK Trade Dress, which is merely the repeating logo. Defendant notes that many fashion designers utilize a repeating logo as part of their trade dress.

9

This Court finds that some discovery concerning the MK Trademark is warranted, but that such discovery must be cabined so that it is proportional to the needs of this case and takes into account that there is no separate claim of trademark infringement. Many of Plaintiff's products do not utilize the MK Trade Dress at issue, and Plaintiff may have many separate enforcement activities related solely to use of the MK Trademark. So, for example, documents pertaining to enforcement of the MK Trademark as distinct from enforcement of the MK Trade Dress are relevant only to the extent they pertain to alleged improper use of the MK Trademark in trade dress. MK Trademark co-existence agreements are relevant only to the extent they address the way that the MK Trademark can be incorporated into Plaintiff's or a third-party's trade dress.[2] Licensing agreements are relevant only to the extent they address the way the MK Trademark can be used in trade dress.

### d. The Disputed Document Requests

As noted above, both parties did not conform to the expectations of the Rules. The following are examples:

Request No. 12 seeks "[a]ll business plans, strategic plans or market analyses concerning Plaintiff, the MK Common Law Trademark or the MK Trade Dress." This request is unduly broad. Defendant must specify the type of information it is seeking by further tailoring the

---

[2] Plaintiff objects to producing a co-existence agreement between it and Mary Kay cosmetics, contending the agreement is irrelevant to the trade dress infringement at issue in this case because Mary Kay sells products in a different category of goods than Plaintiff and does not use its trademark in a repeating pattern as trade dress. It also states that the agreement with Mary Kay is confidential. However, the production of the co-existence agreement with Mary Kay is not burdensome, and the document is relevant to ascertaining restrictions on the use of the MK Trademark on Plaintiff's products and in its trade dress and the strength of Plaintiff's mark. The agreement certainly falls within the broad definition of relevance under Rule 26. Moreover, there is a protective order in place such that the agreement can be produced on a confidential basis. Accordingly, Plaintiff must produce the Mary Kay agreement.

request after careful consideration of what relevant information it is likely to find and weighing the value of that information against the volume of information sought and burden on both parties to collect and review the documents. In other words, Defendant must conduct a form of cost-benefit analysis when propounding and formulating discovery requests. A request for brand awareness or brand meaning surveys pertaining to the MK Trademark and MK Trade Dress would be a more reasonable and specific request. Indeed, on the call with this Court, Plaintiff conceded that such surveys would be relevant.

Request No. 13 seeks "[a]ll documents concerning any trademark searches, investigations, analyses, studies or opinion letters conducted or reviewed by or on behalf of Plaintiff concerning the MK Common Law Trademark or the MK Trade Dress." While this request is indeed impermissibly broad, Plaintiff's response also was unhelpful to getting to a resolution. Plaintiff objected to the request "to the extent it calls for documents not relevant to any party's claims or defenses and imposes a burden that outweighs the needs of this case," without explaining what aspects of the request it viewed as irrelevant and without specifying a narrower subset of documents falling within the request that it would search for or produce. The remainder of Plaintiff's response was boilerplate insofar as it stated, "Michael Kors further objects to this Request to the extent it is overbroad, unduly burdensome, and therefore oppressive. Michael Kors objects to this Request to the extent it calls for the production of documents protected by the attorney-client and/or work product privilege."

Request No. 16 seeks "[s]pecimens of packaging for each product sold or licensed by Plaintiff bearing the MK Common Law Trademark and the MK Trade Dress and documents sufficient to identify the periods of time during which such packaging was in use." Although

11

this request does not use the word "all," it is in fact seeking physical specimens of every product ever sold or licensed by Plaintiff bearing its trademark or trade dress and information to identify the periods of time during which such packaging was in use. The MK Trade Dress has been used in thousands of products sold throughout in the United States in stores and on the internet since it was first used in 2007. But products with the MK Trade Dress are only a subset of Plaintiff's products. Many of the Plaintiff's other products bear the MK Trademark but do not have the same trade dress at issue in this case. There is no need for examination of hundreds or thousands of exemplars, particularly on types of products that Defendant does not even sell such as shoes and apparel. At the same time, Plaintiff provided the following boilerplate response: "Michael Kors objects to this Request to the extent it calls for documents not relevant to any party's claims or defenses and imposes a burden that outweighs the needs of this case." The Plaintiff went on to object to this Request "to the extent it is overbroad, unduly burdensome, and therefore oppressive. Michael Kors has sold thousands of products that bear the MK Common Law Trademark and the MK Trade Dress." It did not offer to produce a limited number of handbag and wallet exemplars for purposes of comparison to allegedly infringing products sold by Defendant and explain the reason for agreeing to produce a sample exemplar.

Request No. 20 seeks "[a]ll documents concerning Plaintiff's grant or receipt of authorization or license to use (or proposed authorization or license to use) the MK Common Law Trademark and the MK Trade Dress in the United States or in commerce with the United States to any third party, including, but not limited to, all license agreements." As written, the request would require notes and emails concerning the negotiation of agreements, draft

12

documents, and all requests by others (whether granted or not) for permission to use the MK Common Law Trademark and the MK Trade Dress. All of this information simply is not necessary in this case. Given the maximum exposure Defendant faces here and the costs associated with a review by Defendant's counsel of all these documents if they were produced, the request is not proportionate to the needs of the case. A better and more tailored request would have been to request all licensing agreements in which Plaintiff agreed to let a third party use the MK Trade Dress or the MK Trademark in its trade dress in the United States and any coexistence agreements addressing the use of the MK Trademark in trade dress or pertaining to the MK Trade Dress. At the same time, Plaintiff responded by stating the same boilerplate language regarding the Request's relevance, the burden imposed, its vague and ambiguous nature, and privilege. Plaintiff did not explain why a licensing agreement pertaining to the MK Trademark and MK Trade Dress would not be relevant or why production of licensing agreements would be burdensome. The Court notes that Plaintiff's Annual Report for 2017 fiscal year states that licensed product and licensing revenue make up only 8.5% of its total revenue, suggesting that there are few licensing arrangements. *See* Plaintiff's Opp., Doc. No. 51, Ex. 3 at 9. Michael Kors also did not explain what about the request it found vague and ambiguous.

Request No. 34 seeks "[a]ll documents concerning any third parties manufacturing, importing, marketing, promoting, advertising, distributing, offering for sale or selling goods identical or similar to those sold by Plaintiff using a trade dress containing or comprising a repeating initial pattern." This too is wildly overbroad. It is not even clear to this Court what Defendant is really seeking through this request or why all the documents requested are

necessary to evaluate the strength of Plaintiff's claims and its defenses.  During the call with this Court, Defendant explained it was looking for documents demonstrating that Plaintiff failed to take action against known infringers.  If this is what Defendant was seeking, Request 34 does not convey this.  Further, it is unclear how Defendant would have the information sought as it seeks information concerning third parties' activities.  Plaintiff repeated the same language objecting to the Request on the grounds that it sought "documents not relevant to any party's claims or defenses and imposes a burden that outweighs the needs of the case . . . . to the extent it is overbroad, unduly burdensome . . . . [and] to the extent it calls for the production of documents protected by [privilege]."  This boilerplate objection is unhelpful to getting to a resolution.

Request No. 37 requests "[a]ll documents concerning any claims made or lawsuits filed by Plaintiff against any third parties using a trademark or trade dress allegedly similar to the MK Common Law Trademark or the MK Trade Dress."  This request would sweep in all pleadings, letters, motion papers, exhibits, and court orders and opinions in all such lawsuits, as well as cease and desist letters and settlement agreements and documents reflecting negotiation of such agreements.  Defendant has no need for this breadth of documents.  A more tailored request would have asked for documents sufficient to identify other lawsuits filed by Plaintiff to protect the MK Trade Dress and the MK Trademark in the United States, including the case caption and docket number, the complaints filed in such lawsuits, and documents sufficient to explain the resolution of each such suit such as a settlement agreement or court opinion.  A separate request could have asked for copies of cease and desist letters sent to third parties that Plaintiff accused of infringing the MK Trade Dress and MK Trademark in the United States,

copies of letters responding to same, and any settlement agreement resulting therefrom. Plaintiff responded to the request by objecting on the same grounds of relevancy, that the request is "overbroad, unduly burden, and therefore oppressive," and attorney-client/work-product privilege. Apparently recognizing that its enforcement efforts are relevant, Michael Kors proffered that "[a] list of the relevant lawsuits filed by Michael Kors can be found on PACER." This proffer was plainly inadequate. Not all of Plaintiff's lawsuits may be accessible on PACER as some suits might have been filed in state courts. Few if any of its cease and desist letters would be publicly available. Additionally, Plaintiff should have a list of enforcement actions it has taken and results obtained from those actions since such evidence will assist it in proving some of the *Polaroid* factors mentioned above.

Michael Kors supplemented its responses in the meet and confer process, pointing out that it took issue with many of the requests to the extent Defendant was looking for documents pertaining to the MK Trademark as distinct from the MK Trade Dress because it has only asserted a trade dress infringement claim against Defendant. It further explained that the strength of its trademark is not truly in dispute insofar as information in its Annual Report showing over $4 billion in annual sales revenue is sufficient to establish the strength of the mark. During the conference with this Court, however, Plaintiff acknowledged that it would need to demonstrate the portion of its revenues generated from products bearing the MK Trade Dress and that it had not produced any documents that would show this even though the close of discovery was only two weeks away. Plaintiff, therefore, has conceded it has not even produced all the evidence it would need to prove its own claim and damages.

As to proportionality, Plaintiff pointed out that the requests seeking information on the strength of the MK Trademark and MK Trade Dress are disproportionate to the needs of this case because the potential relief obtainable based on profits earned from the sale of Defendant's goods is small. Indeed, during the conference, Defendant indicated that her total revenue from the allegedly infringing products was approximately $200,000 and profits less than 25% of revenues. Potential damages are an important consideration in determining whether a request is proportional, particularly in a commercial litigation such as this one. The discovery sought by Defendant would no doubt result in attorneys' fees and expenses on both sides exceeding the damages that could be obtained in this case. When faced with Plaintiff's objection, Defendant should have narrowed its requests to reach a compromise with Plaintiff on the scope of the documents to be produced.

While counsel have an obligation to zealously advocate, when a case involves relatively low damages, counsel must carefully evaluate how to effectively advocate while keeping the costs of litigation down. Paring down discovery requests to those documents most essential to the case, offering meaningful compromises in response to an objectionable document request, avoiding discovery disputes, and meeting and conferring in good faith to resolve disputes without the need for motion practice are all critical obligations under Rules 1 and 26.

It is not this Court's responsibility to fashion document requests and responses for the parties. Rather, the Court's role is to resolve genuine discovery disputes that the parties cannot resolve on their own after a good faith meet and confer process. This Court could strike all of Defendant's requests for being impermissibly broad. It could find that Plaintiff waived its objections because it failed to explain them as required under the rules. However, this Court

will do neither. Instead, in light of the fact that both parties indicated areas for compromise on the call with this Court, the Court will give the parties another chance. By no later than April 12, 2019, Defendant shall amend Requests 6, 12, 13, 16, 20-22, 28, 31-34, and 37 and tailor them consistent with this Court's directions herein; and by no later than April 19, 2019, Plaintiff shall respond to the Amended Requests consistent with this Court's directions herein.

2. **Requests to Admit**

Rule 36 permits a party to serve on any other party "a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to facts, the application of law to fact, or opinions about either; and the genuineness of any described documents." Fed. R. Civ. P. 36(a)(1). If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. Fed. R. Civ. P. 36(a)(4). Further, "a denial must fairly respond to the substance of the matter," and a party may assert lack of knowledge only if it represents that it has made "reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny the request." *Id*. Objections to Requests to Admit must be in writing and clearly state why the request to admit falls outside the scope of permissible discovery under Rule 26(b)(1). Fed. R. Civ. P. 36(a)(5); Fed. R. Civ. P. 36 advisory committee's note to 1970 amendment. Unless the court finds that an objection is justified, it must order an answer. Fed. R. Civ. P. 36(a)(6).

Because Rule 36 incorporates Rule 26(b)(1) standards, a receiving party may seek a protective order on the grounds that requests seek irrelevant information or are too voluminous and burdensome to be proportional to the needs of the case. Fed. R. Civ. P. 36; *see*

17

*also* Fed. R. Civ. P. 36 advisory committee's note to 1970 amendment. At the same time, "a reasonable burden may be imposed . . . when its discharge will facilitate preparation for trial and ease the trial process." Fed. R. Civ. P. 34 advisory committee's note to 1970 amendment.

Plaintiff objects to Requests 1, 2, 13, and 14 to the extent they are directed at the MK Trademark, an issue that it contends is not relevant. Likewise, it takes issue with Requests 1 and 2 to the extent they seek an admission that the parties' respective logos and trade dress are not identical. Plaintiff argues that whether Defendant's trademark and trade dress are identical to Plaintiff's in each and every particular is not the test in a trade dress infringement case such as this. Rather, the similarity of the total, overall impression is the issue to be tested. *Lon Tai Shing Co., LTD v. Koch + Lowy*, 1991 WL 170734, at *8 (S.D.N.Y. Dec. 14, 1990).

Request 1 and 2 merely asks Plaintiff to admit that the trade mark and trade dress are not identical. Defendant presumably wishes to argue that its products were not an exact copy when explaining dissimilarities between the parties' trade dress. While Defendant's point is obvious, it concerns facts that fall within the broad scope of relevance under Rule 26. Furthermore, during the conference with this Court, Plaintiff's counsel conceded that it was not claiming that Defendant's logo and trade dress are identical. Therefore, Plaintiff must answer these requests.

Request 14 seeks an admission that the MK Trademark and MK Trade Dress are not presumptively valid. During the conference, Plaintiff indicated it is not claiming that the MK Trademark or MK Trade Dress are registered with the U.S. Patent and Trademark Office. Since this is a non-controversial point that is relevant to the strength of the mark, there is no basis for

18

Plaintiff to decline to answer Request 14.  Finally, Request 13 seeks an admission that Plaintiff is precluded by agreement with Mary Kay cosmetics from registering the MK Trademark.  The reason why Plaintiff has not registered the MK Trademark is not relevant to the claims and defenses.  Rather, the fact that the MK Trademark is not registered is relevant.  Moreover, this Court has directed Plaintiff to produce the Mary Kay agreement.  Therefore, Defendant will soon learn the answer to the question she has.

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Compel is **DENIED** in part and **GRANTED** in part.   Plaintiff shall amend the disputed document requests by April 12, 2019.  Defendant shall respond to the amended document requests and answer Requests to Admit 1, 2, and 14 by April 19, 2019.  Plaintiff shall produce the Mary Kay agreement subject to the Protective Order in this case.  Plaintiff's objection to producing documents relating to the MK Trademark on relevance grounds is overruled in part, and Defendant's amended requests shall be tailored consistent with the boundaries set by this Court concerning MK Trademark-related documents.  Plaintiff shall produce the documents it agreed to produce but has not yet produced by no later than April 26, 2019.  The parties shall file a letter with the Court on April 26, 2019 advising the Court that they have complied with this Order and identifying any remaining disputes.

Dated: April 8, 2019
      New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge